BAUER, Circuit Judge.
This appeal presents for reconsideration the issue previously addressed by this Court in In re Chicago, Rock Island & Pacific Railroad Company, 537 F.2d 906 (7th Cir. 1976), cert. denied sub nom. Gibbons v. Atchison, Topeka & Santa Fe Railway Co., 429 U.S. 1092, 97 S.Ct. 1102, 51 L.Ed.2d 537 (1977), in which we resolved a conflict of statutory authority between the Bankruptcy Act and the Interstate Commerce Act in favor of the power granted to the Interstate Commerce Commission. Petitioners-appellants in these reorganization proceedings appeal from the order of the district court denying their request to obtain a preferential payment of certain claims asserted by the petitioners against the estate *46 of the debtor, the Chicago, Milwaukee, St. Paul & Pacific Railroad Company. The district court held that under the standards set forth by this Court in Rock Island the petitioners were not entitled to a priority over the claims of other general creditors of the debtor. We affirm.
I
On December 19, 1977, the debtor filed a voluntary petition for reorganization under Section 77 of the Bankruptcy Act, 11 U.S.C. § 205. On December 20, 1977, the district court entered its first order in the reorganization proceedings, directing the debtor to pay all per diem charges for the lease of railroad freight cars that became due on or after February 1, 1978, but directing payment of per diem charges coming due prior to February 1, 1978 only “as promptly as may be practicable as the financial ability of the debtor shall permit.”
On December 27, 1977, seventeen trunk-line railroads filed a petition seeking to amend that order to provide for the priority payment by the debtor, on an installment basis, of per diem balances owed to those creditors for the pre-reorganization use of their freight cars. On January 23,1978, the district court granted the petition. Subsequently, on May 30, 1978, the district court further amended its order by directing a similar priority of payment for pre-reorganization per diem balances owed by the debtor to three additional trunkline railroads.
On September 12,1978, petitioners-appellants, representing twenty-four shortline railroads, requested the district court to amend its order to permit a priority of payment on an installment basis of approximately $423,000.00 in pre-reorganization per diem balances due to them by the debt- or for its use of petitioner’s freight cars. Neither the trustee nor the Interstate Commerce Commission opposed the petition, but it was opposed by the respondents-appellees in their capacities as indenture trustees and general creditors of the debtor. Respondents opposed the petition on the ground that the petitioners did not own the railroad cars against which the per diem rentals were assessed, but instead held them as lessees of Itel Corporation, a non-railroad investor. Under the terms of petitioners’ “non-equity” leases with Itel, the freight cars bear the name and identifying insignia of the respective shortline railroads, but all other indicia of ownership are vested in Itel. Itel receives the benefits of all warranties on the cars, performs all record-keeping functions, pays all costs, expenses and fees incurred by the use and operation of the cars, and reimburses the lessee for all taxes, assessments and charges the lessee pays on account of the leased cars.
Moreover, Itel is entitled to all payments accruing to the shortline railroads for the use of the cars by other railroads to the extent that the annual utilization of the cars is less than or equal to ninety percent of the days the freight cars are on lease. The shortline railroads receive income for their own accounts only if the car utilization exceeds the ninety percent base rental, and even then receive only one-half of the payments in excess of the base rental with the balance payable to Itel.
Based on the realities of the financial and operating arrangement between the petitioners and Itel, the district court concluded that the priority permitted in Rock Island was not warranted in this case and accordingly denied the petition. However, the court did allow the petitioners the opportunity to show entitlement to payment for up to five percent of the amounts claimed, which would be the maximum amount the shortlines would receive if the cars were completely utilized by other carriers.
II
On appeal, the petitioners contend that the controlling authority of Rock Island mandates reversal of the order appealed from denying their petition for a priority payment. Respondents, of course, contend that Rock Island is inapposite, except to the extent that it entitles petitioners to a five *47 percent payment of the net per diem balances.**
In Rock Island, this Court determined that an accommodation between the objectives of the Bankruptcy Act and the Interstate Commerce Act must be made. In that case, a conflict arose between the authority of the reorganization court to determine the priority of claims asserted against a bankrupt railroad and the authority of the Interstate Commerce Commission to require a car-user railroad to pay pre-reorganization per diem charges owed to a car-owner under rules and regulations promulgated byv the Commission. We concluded that the power of the reorganization court to determine priorities had to yield to the Commission’s authority over car service. 537 F.2d at 910-911.
In reaching this conclusion, we reviewed the Congressional policy underlying the per diem rate structure applicable to the national railway system. Per diem charges for use of railroad cars were instituted to insure an adequate supply and efficient utilization of the nation’s fleet of railroad cars. For example, in the grid of railroad lines spanning the country, cars of the Atlantic Railroad may be loaded in Maine, destined ultimately to be delivered by the Pacific Railroad in California, which in the interim traverses the lines of intermediate carriers. The per diem is a charge that the other carriers pay the car-owning Atlantic Railroad for the use of its car while it is on their lines.
The basic per diem that had been in existence for many years prior to 1966 was so low that it did not result in generating an adequate supply of the available fleet of cars, i. e., it did not sufficiently encourage the user carrier to remove an unloaded freight car from its line and return it to the owner or another carrier for loading. In 1966, the Congress determined to remedy this situation by raising the per diem rental charges to create an incentive for the railroads to sustain car movement and also to generate funds for the purchase of additional freight cars. See 49 U.S.C. § 1, ¶ 14(a); Incentive Per Diem Charges-1968, 337 I.C.C. 183 (1969), 349 I.C.C. 303 (1975), 353 I.C.C. 366 (1977). In furtherance of this Congressional intent, the Interstate Commerce Commission promulgated certain rules and regulations which provided that common carriers by railroad were required to segregate in separate bank accounts credit balances resulting from incentive income payments which could be “drawn down” only to rebuild freight cars or to purchase new ones. 49 C.F.R. § 1036.
. In Rock Island we recognized the broad powers accorded to the reorganization court in matters affecting the claims of creditors. Section 77(a) of the Bankruptcy Act confers on the court exclusive jurisdiction over the debtor railroad and its property and grants the court all powers over that property traditionally exercised by an equity receiver. 537 F.2d at 909. We also noted that Section 77(c)(2) provides that during the reorganization period the trustee has the “power to operate the business of the debt- or railroad ‘subject to the control of the judge and the jurisdiction of the Commission.’ .11 U.S.C. § 205(c)(2).” Id. at 910 (emphasis in original). We therefore held that a reorganization court is without power to exempt a railroad in reorganization from compliance with the order of the Commission requiring priority of payment of charges accrued to pre-reorganization per diem accounts.
*48 We also noted other factors that persuaded us that the reorganization court’s power in determining the priority of per diem charges in relation to claims of other creditors had been circumscribed by the superseding authority of the Commission in this area. Thus, we adopted the Commission’s characterization of the' relationship rather than that of debtor and creditor because the Commission had treated per diem accounts as a statutorily required sharing of the costs of maintaining an adequate national car pool and because the basic per diem rates provided no profit to the car-owning railroad and were assessed even when the user derived no benefit from its use of the car. We also deferred to the Commission’s argument concerning the mandatory nature of its orders governing the settlement of per diem accounts which prescribe the time and manner of payment in contrast to other interline accounts in which the trustee in its discretion had deferred payment. Accordingly, we concluded that the Congressional goal of equitable cost-sharing of a common pool of rail cars would be achieved only through the uniform observance of per diem charges.
In the case at bar, the district court decided that the rationale underlying the priority payment of per diem accounts due to the interline railroads in Rock Island, and upon which the court granted a priority to the twenty trunkline railroads in these proceedings, did not require a similar priority payment of the per diem balances due to the petitioning shortline railroads. Based on its examination of the relationship between the petitioners and the non-railroad company Itel, the district court found Itel to be the principal beneficiary of the petition and the real party in interest with respect to petitioners’ claim to per diem balances owed by the debtor. Itel entered into its arrangement with the petitioners in order to obtain the higher rentals permitted by the regulations of the Interstate Commerce Commission when railroad cars are leased from railroad companies rather than from shippers or other non-railroad owners. However, the arrangement, also benefits the petitioners by making rail cars available to them without the capital investment which shortline railroads are not ordinarily able to afford. Thus, under the terms of its “non-equity” leases with the petitioners, Itel not only owns the railroad cars but it is also responsible for the administrative, accounting and maintenance services for the cars. For these services, Itel receives ninety percent of all rentals paid by the using railroads and shares any excess rentals equally with the petitioners. Although there had been no showing that petitioners actually received any rental payments in excess of the ninety percent fee due to Itel, the court noted that the shortline railroads would only be entitled to a maximum of five percent of the annual rentals earned under such circumstances.
We agree with the district court that the realities of the economic and operating arrangement between petitioners and Itel distinguish this case from Rock Island. Itel, as a non-railroad investor, is not within the scope of the Interstate Commerce Commission rules pertaining to per diem settlements and is therefore not accountable to the compulsory reinvestment imposed on railroads by the Commission’s incentive per diem regulations. 49 C.F.R. § 1036.1. Thus, except for the five percent maximum earned on occasion by the shortline railroads, we are not faced with a “mandatory” regulation which we found in Rock Island to be controlling over the discretion otherwise available to the reorganization court under Section 77 of the Bankruptcy Act. Nor can the relationship between Itel and the debtor be characterized as a copartnership rather than one of a debtor and creditor. The failure of the debtor to pay the per diem balances due will not threaten the solvency of other railroads. Itel is not a participant in “a group of carriers engaged in multitudinous joint ventures [shouldering] the burden of acquiring and maintaining the vehicles used by all.” Rock Island, supra at 911, quoting Chicago B & Q R. R., 332 I.C.C. at 186. Although Itel supplies necessary equipment and services to the railroads, it is not a railroad sharing the cost of a national rail system because as a *49 non-rail investor it does not use rail cars and therefore has no liability to pay per diem charges to other railroads. On the contrary, when the nature of the financial arrangements between the petitioner and Itel is pierced it is apparent that Itel is in the same position as other unsecured creditors of the debtor.
Thus, in the absence of the considerations found to be persuasive in Rock Island, we conclude that the district court properly exercised the discretion accorded to it under Section 77 of the Bankruptcy Act in denying the relief sought by the petitioners except with respect to their entitlement to five percent of the per diem balances owed by the debtor. For the foregoing reasons the order appealed from is affirmed and the Clerk of this Court is directed to enter judgment accordingly.
Affirmed.

 Respondents alternatively argue that the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 et seq., constitutes a Congressional repudiation of the holding in Rock Island. The Act provides that any order of the Interstate Commerce Commission that would require a priority expenditure of funds from a bankrupt estate shall not be effective unless approved by the bankruptcy court. 11 U.S.C. § 1166. Since in Rock Island we held that such orders were binding on the court, respondents assert that the Rock Island decision has been legislatively overruled and that therefore the Bankruptcy Reform Act is dispositive of the issue presented by this appeal. However, because the Act did not become effective until October 1, 1979 and specifically precludes its retroactive application in this context, we find it unnecessary to decide the merits of the respondent’s argument here.