In the Matter of CHICAGO, MILWAU-
KEE, ST. PAUL AND PACIFIC RAIL-
ROAD COMPANY, Debtor.

Appeal of CITY OF PRINCEVILLE
RAILROAD, The Marinette, Tomahawk
& Western Railroad and The Valdosta
Southern Railroad.

No. 80–1677.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1981.

Decided May 19, 1981.

Arthur W. Friedman, Chicago, Ill., for appellant.

Edward Malstrom-Isham, Lincoln & Beale, Chicago, Ill., for appellee.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and CRABB, District Judge.*

FAIRCHILD, Chief Judge.

This case raises the question of whether a prior order of the district court entitles certain interline railroads to current payment of car repair accounts for which the Chicago, Milwaukee, St. Paul and Pacific Railroad (Milwaukee Road) became liable prior to initiation of its reorganization proceedings. We hold that the district court did not err in determining that payment in full out of current funds is not mandated by the terms of the earlier order and therefore affirm the judgment appealed from.

The facts relevant to this appeal may be simply stated. The Milwaukee Road filed a petition for reorganization under the bankruptcy laws in the federal district court on December 19, 1977. The following day, in paragraph 3–B of the first order entered in the reorganization proceedings (Order No. 1), the court directed and authorized the Milwaukee Road to pay out of funds then or thereafter in its possession:

"[a]ll interline accounts and balances ... such as ... car repairs ... which are first due to be stated or presented for settlement ... on or after February 1,

* The Honorable Barbara B. Crabb of the Western District of Wisconsin is sitting by designation.

1978, . . . [which] could not have been so stated or presented prior thereto."

The petitioners in the instant action are three interline railroads[1] whose six cars[2] were damaged while on the Milwaukee Road's line at various times between December 1976 and November 1977, prior to the filing for reorganization. In each instance the Milwaukee Road, which is responsible for the damages, attached a defect card to the damaged car specifying the nature of the damage and at the request of the respective petitioner moved the car to a Transco, Inc., repair facility in Minnesota, all pursuant to the rules of the Association of American Railroads (AAR). Transco did not complete work on four of the cars until after February 1, 1978, and though the other two cars were finished on January 26, 1978, invoices for them were not received by petitioners until after the February 1 deadline.

Claiming that the car repair accounts could not have been stated or presented for settlement prior to February 1, 1978—because the amounts of those charges were as of then still unknown to them—petitioners requested the district court to compel the Milwaukee Road to currently pay for the repairs. That petition to enforce Order No. 1 was denied by the court with a brief memorandum. Though the court did not clearly enunciate the basis for its decision, it observed, in part, that petitioners had conceded "that their car damage charges [did] not constitute current expenses and costs incurred by the trustee," and declined to order that "petitioners' claim for pre-petition car damage should be paid while claims for post-petition state property tax-

es, interest on funded or fixed debt, and employee claims for labor protection [were] deferred."

On appeal petitioners urge that the district court's action cannot be reconciled with the language of its prior order. It is their position that the terms of Order No. 1 are clear and without need of interpretation; that the relevant inquiry is simply whether the charges could have been stated or presented before February 1, 1978; and that because those amounts were at that point unknown, the accounts were entitled to payment from current funds.

We begin our analysis by noting that there are two distinct parts to the language of paragraph 3–B. First, the account must be "first due to be stated or presented . . . on or after February 1, 1978"; secondly, it must also be one which "could not have been so stated or presented prior thereto." Both criteria must be met for a claim to qualify for current payment.

The principal difficulty with petitioners' argument is that it conveniently overlooks several terminological ambiguities in key phrases of paragraph 3–B. Petitioners assume that "first due to be stated or presented" is equivalent to "first *able* to be stated or presented," and insist that because they did not have the invoices from Transco, they were unable to state or present those claims before February 1. It may be asserted, not implausibly, however, that by using the word "due" the court was speaking in terms of accrual not ability, and that it was concerned with the point at which the liability attached, rather than when the amount of the liability became certain.

---

1. An interline railroad is a railroad common carrier which cooperates with other railroads in the transportation of passengers and property over several different lines.

   The interlines bringing this appeal are the City of Princeville Railway, the Marinette, Tomahawk and Western Railroad, and the Valdosta Southern Railroad.

2. The six cars involved in this appeal are among several leased by petitioners from the Itel Corporation. Because we find petitioners'

interpretation of Order No. 1 to be without merit, we find it unnecessary to decide whether the leasing arrangement or other considerations affected the status of the car repairs as interline accounts. *But compare Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Company*, 632 F.2d 45 (7th Cir., 1980), holding that the realities of the economic and operating arrangements between Itel and certain railroads made it appropriate to impose a percentage limitation on *per diem* balances that could be collected from the debtor.

Under this view, a charge would be "due" to be first stated or presented once the liability had been incurred. Similarly, petitioners uncritically assume that the car repair claims "could not have been . . . stated or presented prior" to February 1 because, as events turned out, they had not received the bills for the repairs. In contrast, however, the Milwaukee Road suggests that the words "could not" should be read restrictively and that since the repairs could conceivably have been done more quickly, current payment should be denied. Added to the above uncertainties is the further question of whether there is a difference between what constitutes a first statement and a first presentment.

These ambiguities are not merely sophistic, but instead go to the heart of what the district court intended in issuing Order No. 1. Petitioners offer little in the way of operative facts, past practice, or legal precedent that is capable of resolving these questions.

First, petitioners chiefly rely upon AAR rule 102(19), which is incorporated by reference, along with the Association's other rules, into Order No. 1. Rule 102(19) states:

"Charges in effect at date defect card repairs are completed will govern regardless of the date of defect card."

This rule does not purport to define what constitutes a statement or presentment of an account, nor does it say when such action is first due to be taken or could not have been taken. It simply requires that the amount eventually paid be calculated in accordance with prices in effect at the time the work is finished. Rule 102(19) no more informs us of how to properly interpret Order No. 1 than does AAR rule 102(20)—which petitioners do not cite—which, by providing that the "[r]ule in effect on date of defect card shall govern responsibility for repairs," indicates that liability arose prior to the reorganization.

Second, petitioners' counsel intimated at oral argument that it would be unfair to treat petitioners differently from other similarly situated creditors. Upon being questioned by the court, however, counsel acknowledged that he had no information that the trustee had in fact paid or planned to pay out of current funds claims similar to petitioners'; and counsel for the Milwaukee Road also disavowed such knowledge. Consequently, we cannot say that past practice forms a basis for disturbing the holding below.

Third, petitioners have been unable to direct our attention to any legal precedent providing significant support for their interpretation of the disputed language in Order No. 1. Apparently no case involving the Milwaukee Road reorganization has raised the exact issue presented by this appeal. And, of the cases arising from different contexts, the one most nearly analogous, *In re Penn Central Transportation Co.*, 486 F.2d 519, 530–531 (3rd Cir. 1973) (*en banc*), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974), appears to weigh in favor of the decision reached at the district court. Order No. 9 in that reorganization, in language slightly different from the terms involved in the present case, required the Penn Central to pay all interline accounts, including car repairs, "first stated or presented for settlement on or after [July 1, 1970]." The appellant interline railroads argued that the Penn Central's failure to pay for car repairs that were made in May 1970, but not to become due for payment until after July 1, violated the terms of Order No. 9. In passing upon this claim, the Third Circuit interpreted "first stated or presented" as meaning "first reported" and thereby excluded from payment with current funds those car repair accounts for damage which was reported prior to the cutoff date.

*Penn Central* is not precisely in point with the instant appeal because there the amount owed for the car repairs was known prior to the July 1 deadline and thus the court did not need to hold that an account could be first stated or presented before its total had been ascertained. Yet, the rationale underlying *Penn Central* supports the

result in the present case. The court recognized that the reason for establishing a *cutoff date in reorganization proceedings is* to separate post-petition expenses from those incurred prior to the filing. 486 F.2d at 530. By doing so, post-petition expenditures can be given payment priority over pre-reorganization claims by treating the former as expenses of administration of the property. This helps to ensure that creditors will not be reluctant to continue dealing with the debtor for fear of non-payment, and thus enables the trustee of the property to continue operating the railroad while working toward its reorganization.

In the present case, liability for the damage to the cars accrued prior to the filing of the petition and was solely an expense of pre-reorganization operations. Petitioners do not suggest that they entered into the transactions relevant to the six cars in reliance upon any representation, express or implied, that claims arising therefrom would be accorded preferential treatment over other pre-petition claims, and we see no reason to interpret Order No. 1 so it would have that effect.[3] To do so would not further the policies which form the jurisprudential keystone of railroad reorganization law.[4]

Further, the *Penn Central* court recognized that absent a "compelling basis to hold otherwise" a "court's interpretation of its own order in the decision appealed from is entitled to great weight." 486 F.2d at 531. While the case might be different where logic, past practice, or precedent are persuasive of a contrary result, those factors are not present in the instant appeal.

We conclude that petitioners have failed to show that the district court erred in interpreting the scope of its prior order. Accordingly, the judgment appealed from is AFFIRMED.

---

3. It is unclear why Order No. 1 set the cutoff date as February 1, 1978, rather than on the date the petition was filed, December 19, 1977. One possibility, suggested at oral argument, is that the delay may for some reason have been necessary for statement or presentment of interline accounts or balances other than car repairs. In any event, a similar course appears to have been followed in *Penn Central*. The Penn Central filed for reorganization on June 21, 1970, but the mandatory directive to pay interline accounts (as opposed to an earlier discretionary authorization to pay such claims) set the cutoff date as July 1, 1970. *See* 486 F.2d at 521–522, 530.

4. Indeed, if carried to its logical extreme, petitioners' interpretation of Order No. 1 would seem to require that if two cars were damaged at the same time prior to reorganization and that one was repaired prior to the February 1 deadline and the other thereafter, the latter bill could be presented for current payment whereas the other that was rendered more promptly would be denied that preference. We fail to see that any policy deserving protection would be enhanced by that disparate treatment.