## Richmond

### RICHMOND, FREDERICKSBURG AND POTOMAC RAILROAD COMPANY

### V.

### VIRGINIA CENTRAL RAILWAY COMPANY, ET AL.

June 12, 1981.

Record No. 781820.

Present: All the Justices.

*David F. Peterson; Charles A. Hartz, Jr. (Hicks, Baker & Peterson*, on briefs), for appellant.

*Glenn M. Cooper [Md.] (Thomas E. Crosley, Jr.; Paley, Roth-man, Cooper & Eig [Md.]; Roberts, Crosley, Haley & Ashby*, on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, in order to determine who is entitled to certain railroad "car-hire funds" in controversy we must review a complex investment plan. The car-hire funds, some collected and held in an escrow bank account by Virginia Central Railway Company (VCR), and others payable to VCR, arose from rental charges for the use of freight cars owned by individual investors, leased to VCR, and sublet by VCR to various railroads.

Richmond, Fredericksburg and Potomac Railroad Company (RF&P) initiated this action on March 9, 1978, by filing its motion for judgment in the trial court against VCR for net freight charges alleged to be payable pursuant to an agreement dated December 1, 1976. Under the agreement, RF&P provided VCR with accounting services for "interline" shipments for which VCR collected the freight charges from the consignees. Pursuant to regulations of the Association of American Railroads, the collecting railroad apportions the collected freight charges among the various railroads that participated in the shipments, or the railroads over whose tracks the shipments moved. The agreement required RF&P to handle VCR's interline settlements and, subject to reimbursement by VCR, to pay to the other railroads the shares of the freight charges to which they were entitled. At the time the action was filed in the trial court, VCR's reimbursements to RF&P were delinquent in the amount of $81,270.04, plus interest.

On April 4, 1978, RF&P filed a petition seeking to attach specified tangible personal property of VCR in this State, and to require VCR to pay over to the General Receiver any car-hire funds in the possession of or receivable by VCR. A temporary restraining order was entered prohibiting VCR from removing its property from Virginia, and directing VCR to pay car-hire funds to the General Receiver in an amount not to exceed $88,500. After numerous individual car owners had been permitted to intervene as parties defendant,[1] VCR paid over to the General Re-

---

[1] The intervening car owners (appellees herein) were the following:
Alexander Korn, Charlotte Korn, Ira Lechner, Susan Lechner, Harry C. Lewis, R. W. Beavers, Clifford W. Terry, Mary K. Terry, Jerrold M. Post, Allan F. Mulli-

ceiver the car-hire funds collected by it and held in an escrow account in a District of Columbia bank.

The trial court heard the evidence *ore tenus* and by memorandum opinion dated June 8, 1978, concluded that the car-hire payments received by VCR and paid over to the General Receiver pursuant to the court order were owned by the individual car owners, not by VCR, and did not constitute assets of VCR subject to attachment. On June 19, 1978, RF&P applied to the clerk of the trial court for additional attachments of car-hire funds payable by various railroads to VCR. The intervenors filed motions to quash these attachments.

By order entered July 5, 1978, the trial court dismissed the original attachment, on the ground stated in its June 8 memorandum opinion, but awarded judgment in favor of RF&P against VCR in the amount of $81,270.04, with interest. By order entered September 27, 1978, the court, ruling that the car-hire funds receivable by VCR from other railroads were similar to those previously found to be immune to attachment, dismissed the additional attachments. The order directed that the funds originally deposited with the General Receiver be distributed to the car owners, that $89,236.99 in car-hire funds held by the various railroads be paid to the General Receiver, and that the General Receiver deposit $80,000 of those funds on interest pending the outcome of this appeal, and distribute the balance to the car owners.

On appeal, RF&P contends that the trial court erred in ruling that neither the car-hire funds held by VCR nor those held by other railroads subletting cars from VCR were subject to attachment by RF&P. RF&P further argues that the court erred in not

gan, Helene C. Mulligan, Daniel L. Glick, Gail M. Glick, Mark Winnick, Bonnie Winnick, John A. Permenter, Margaret Conant, Henry H. Krevor, Harriette Chaitt, Thomas Frey, Gerald H. TePaske, Laurence Schor, Susan Schor, Joe W. Fleming, Margaret Fleming, Allen G. Siegel, Rochelle R. Siegel, James M. Schuette, Richard Becker, Mayer Smith, Ruth G. Smith, Chong Doo Lee, George I. Mishtowt, Jacoba R. Mishtowt, William S. Rollow, Eda Ann Abell, Donovan L. Humphries, Hazel M. Humphries, Irving Greenspon, Adele Greenspon, Burton D. Liss, Joseph Collela, Mena Collela, Michael Lemp, Joan Lemp, Wilbur L. Parker, Pauline Parker, Giovanni Mastrangelo, Gary J. Healy, John C. Devers, Robert E. Morton, Walter D. Abendschein, Jerome Goldman, Donald W. Merryfield, Richard Conant, Thomas F. Cullen, Mary Jane D. Cullen, Raymond Curtis Bristol, Donald R. Payne, Jeffrey Malka, John R. Trax, Ronald Kretkowski, Martin Malcolm, Pearl Malcolm, Peter Spiegel, Peregrine Spiegel, John T. Schiffman, Jill G. Schiffman, Ivan J. Shefferman, Stephen H. Paley, Mark S. Rothman and Railcar '76 Limited Partnership.

ruling that, even if the car-hire funds were trust funds, when VCR used for the benefit of the car owners interline freight collections held in trust for RF&P, the car-hire proceeds became subject to payment of the debt owed by VCR to RF&P. The car owners have assigned cross-error to the trial court's failure to dismiss the attachment for lack of supporting evidence and lack of jurisdiction over the funds attached.

Resolution of the issues presented requires a thorough examination of the relationship between the car owners and VCR. The evidence, made a part of the record by a written statement signed by opposing counsel and by the trial judge, will be viewed in the light most favorable to the car owners, who prevailed in the trial court.

Railvest, Inc., a Maryland corporation, solicited various persons to purchase railroad freight cars for investment purposes. The cars were leased under ten-year non-equity leases by Alexander Korn and other owner-lessors to VCR, a wholly-owned subsidiary of Railvest. When a car leased to VCR was used by another railroad company, VCR received car-hire payments consisting of (1) a fee based upon the mileage the car traveled, (2) an amount for each day the car was used (per diem), and (3) an additional amount based upon the days of use for these particular types of cars (incentive per diem). While the mileage fee could be earned by any owner, under Interstate Commerce Commission (ICC) regulations the per diem and incentive per diem fees could only be earned by cars which were owned, or leased under non-equity leases for not less than ten years, by a common carrier. Prospective investors were informed that car-hire payments would be handled as "escrow" funds for the benefit of the owners and would not be adversely affected in the event that VCR became bankrupt.

Each owner-lessor signed a management agreement with Railvest and a lease agreement with VCR. Under these agreements the owner-lessors were to receive as "service charges" all the car-hire funds earned by their cars less deductions for expenses and the specified management fees charged by Railvest. The lease agreement provided that VCR, as lessee, would be responsible for the collection of all car-hire earnings generated by the cars while in VCR's service, and such earnings were payable by VCR to the owner-lessors pursuant to the management agreement. VCR reserved the right to place such of its permanent let-

terings and markings upon the cars as were necessary to implement the lease agreement under ICC regulations.

At the end of each month, VCR drew sight drafts on the railroads which owed rental for use of the cars sublet from VCR. These drafts were paid to a District of Columbia bank and placed in an escrow account pending distribution on a quarterly basis to the owner-lessors after appropriate deductions for expenses and management fees payable to Railvest.

■ We entertain grave doubt that a valid ground for the original pre-judgment attachment, asserted by RF&P under Code § 8.01-534(3),[2] was established in the trial court, as the evidence fails to show that the funds in the escrow account were ever in Virginia. Nevertheless, we will assume, without deciding, that there was a valid ground for attachment, and we will proceed to review the ruling of the trial court on the merits.

Joseph E. Keating, president of both Railvest and VCR, testified that car-hire funds were never commingled with VCR funds, but were paid by other railroads directly to the Washington, D. C. bank and there placed in escrow for the car owners. VCR did not pay taxes on the car-hire funds or claim them as income for tax purposes. The balance sheet of VCR listed such funds as an asset of VCR, but an explanatory footnote stated that they were held in escrow for the car owners. Neither the financial statement nor the profit-and-loss statement of VCR or Railvest carried car-hire receivables as receivables of VCR or car-hire receipts as assets of VCR. The car-hire funds were handled by VCR as the property of the car owners.

Keating testified, however, that in March, 1978, he requested permission of the car owners to use some of the car-hire funds to pay general operating expenses of VCR. The car owners twice rejected his request but eventually agreed that some of the funds could be so used to permit VCR to continue to process sight drafts for car-hire payments to the car owners.

---

[2] Under Code § 8.01-534 (3) a creditor may attach the debtor's property if the debtor:
Intends to remove, or is removing, or has removed the specific property sued for, or his own estate, or the proceeds of the sale of his property, or a material part of such estate or proceeds, out of this Commonwealth so that there will probably not be therein effects of such debtor sufficient to satisfy the claim when judgment is obtained therefor should only the ordinary process of law be used to obtain the judgment.

The evidence is sufficient to support the trial court's ruling that the car-hire funds held in escrow by VCR belonged to the car owners, that VCR had no right or entitlement to the funds, and that they were not subject to attachment as property of VCR. It was the intention of the parties that the escrowed funds be held for the car owners, and the conduct of the parties was inconsistent with any other intention.

RF&P says, however, that the same reasoning does not apply as to the car-hire funds held by other railroads that have used the cars under sub-leases from VCR. Therefore, the argument continues, the funds now in controversy, consisting of car-hire funds paid by such railroads, under court order, to the General Receiver, are subject to attachment by RF&P. We do not agree. These funds could be attached by RF&P only if they constituted assets of its debtor, VCR.

It has been held that amounts due on per diem car-hire accounts are not held in trust by the using railroads for the benefit of the railroad from which such cars are leased, but that such lease arrangements give rise to debtor-creditor relationships. *In Re Penn Central Transportation Company,* 486 F.2d 519, 528 (3rd Cir. 1973). If the funds payable were not the property of VCR, however, they could not be attached by a creditor of VCR, the question whether they were held in trust for the car owners is irrelevant, and the car owners are entitled to the funds, less the expenses and management fees payable to Railvest under the management agreements.

The recent case *In Re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 632 F.2d 45 (7th Cir. 1980), not cited by counsel, is apposite. There, the debtor railroad sought reorganization under the Bankruptcy Act. Numerous short line railroads intervened by petition to obtain priority payment of pre-reorganization per diem balances payable by the debtor railroad for the rental of freight cars owned by Itel, a nonrailroad investor, leased to the short line railroads under valid non-equity leases, and sublet by them to the debtor. Under their specific agreement, the short line railroads were entitled to receive a maximum of 5% of the car-hire fees, and Itel was entitled to the balance. The court held that, under these circumstances, the real party in interest was Itel, that the short line railroads, therefore, were not entitled to priority, and that Itel was in the same position as other unsecured creditors of the debtor railroad.

By the same reasoning, the real parties in interest as to the car-hire funds in the present case are the individual investors, and not VCR. Indeed, VCR, unlike the short line railroads in the cited case, was not entitled to any of the car-hire funds payable by the railroads that used the cars. VCR had no property interest in the funds, and the car owners, as to those funds, were unsecured creditors of the railroads that sublet the cars. As unsecured creditors, they are entitled to the funds paid by those railroads to the General Receiver, subject to expenses and management fees payable by contract to Railvest.

We are not persuaded by RF&P's argument that federal regulations require payment of the subject car-hire funds *to a railroad only,* and that therefore such funds must be considered the property of VCR. RF&P relies upon 49 C.F.R. § 1036 to support its position. This regulation, however, which pertains to incentive per diem charges and the use of such funds, does not prohibit private investors and railroads from determining by agreement to whom the funds are to be paid.

There is evidence that the car owners permitted VCR to use some of their car-hire funds in order to keep VCR operating, but there is no basis in the evidence for the contention of RF&P that by VCR's unauthorized use of unrelated interline freight collections held by VCR in trust for RF&P the car owners were unjustly enriched at the expense of RF&P. The car-hire funds not used for VCR's operations were not converted into VCR assets subject to attachment by its creditors.

It thus appears that the trial court correctly ruled that VCR did not own either the funds held by it in the escrow account or the funds deposited with the General Receiver by the railroads that had sublet cars from VCR. Therefore, we will affirm the judgment of the trial court.

*Affirmed.*

THOMPSON, J., dissenting

The majority, in my opinion, has misconstrued 49 C.F.R. § 1036* and the case of *In Re Chicago, Milwaukee, St. Paul & Pacific Railroad,* 632 F.2d 45 (7th Cir. 1980).

The majority opinion states:

> VCR had no property interest in the funds, and the car own-
> ers, as to those funds, were unsecured creditors of the rail-
> roads that sublet the cars. As unsecured creditors, they are
> entitled to the funds paid by those railroads to the General
> Receiver, subject to expenses and management fees payable
> by contract to Railvest.

This ignores the economic realities of the transactions. The rail-
road cars were ostensibly the property of VCR; they carried its
markings and earned additional compensation because of their af-
filiation with VCR. Further, the sight draft drawn by Virginia
Central Railway bore this legend, "FOR CAR HIRE . . .
EARNED ON VA. CENT. XFCARS."

I believe that the attaching creditor or lien creditor of VCR had
a right to subject these funds to its judgment and the lower court
erred to this extent.

---

* Each common carrier by railroad subject to the Interstate Commerce Act shall pay to
the *owning railroads*, . . . the additional per diem charges set forth in § 1036.2 on all box
cars and gondola cars shown below, while in the possession of non-owning railroads and
subject to per diem rules.